Richard R. Barker
Acting United States Attorney
Eastern District of Washington
Ann T. Wick
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>      vs.<br><br>CASEY ALLEN GREER,<br><br>                Defendant. | Case No.: 2:23-CR-074-MKD-2<br><br>United States' Sentencing Memorandum |

      Plaintiff, United States of America, by and through Richard R. Barker, Acting United States Attorney for the Eastern District of Washington, and Ann T. Wick, Assistant United States Attorney for the Eastern District of Washington, submits this memorandum setting forth the United States' position at sentencing. The government recommends that the Court sentence Defendant to a total term of imprisonment of 840 months (70 years), followed by a life term of supervised release, in the above-captioned case. The United States additionally requests a no-contact order as to Minor S and her family, a final order of forfeiture, and an order of restitution.

United States' Sentencing Memorandum – 1

# INTRODUCTION

A seasoned sexual predator, skilled in the art of manipulation, Defendant sexually abused and exploited a 10-year-old girl, and he groomed everyone around her in order to do it. He bragged to his sex-offender friend and Co-defendant about how he accomplished his nighttime assaults and sent him pictures and video. The two texted one another, scheming about the next time Defendant would try to abuse Minor S and of what he would record and send to Co-defendant Bolen. The files were found across both Defendants' devices and, notably, in Defendant's iCloud account, where Defendant's face is visible in one such recording.

For approximately six weeks, the Defendants preyed upon the minor victim, laughing and strategizing like it was one of the online games they liked to play together. Those six weeks have left an indelible mark on the victim and her family, likely for the rest of their lives. It is only fitting that the Court impose a sentence that lasts the rest of Defendant's life.

While the Court can craft such a sentence in a variety of ways, and has the discretion to run as many counts consecutively as necessary to result in such a sentence, the United States respectfully submits that a sentence as follows, is both supported by the sentencing factors of 18 U.S.C. § 3553(a) and consistent with applicable sentencing guidelines, resulting in a sentence sufficient, but not greater than necessary, to accomplish the goals of sentencing:

United States' Sentencing Memorandum – 2

  Ct. 1: 60 years;

  Ct. 2: 60 years, concurrent with Ct. 1;

  Ct. 3: 20 years, concurrent with Cts. 1 and 2;

  Ct. 7: 10 years, consecutive to Cts. 1 and 2;

all counts to be followed by a life term of supervised release.

  Defendant Greer filed two objections to the initial Presentence Investigation Report (hereinafter "PSR"). ECF Nos. 200, 202. The objections pertain to the period of time Defendant spent in state custody on pending state charges prior to appearing in federal court and request the Court impose Defendant's federal sentence concurrently to the as-yet unadjudicated state case. While the Court can recommend the federal sentence run either consecutive to or concurrently with the eventual state sentence, that decision is ultimately in the hands of the state court, when it imposes sentence after this Court.

## I. <u>Offense Level & Criminal History</u>

  The Ninth Circuit has set forth a basic framework which the district courts should follow in compliance with the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005):

  (1) Courts are to begin all sentencing proceedings by correctly determining the applicable sentencing guidelines range, precisely as they would have before *Booker*.

  (2) Courts should then consider the § 3553(a) factors to decide if they support the sentence suggested by the parties. Courts may not presume

United States' Sentencing Memorandum – 3

that the guidelines range is reasonable. Nor should the guidelines factors be given more or less weight than any other. They are simply to be treated as one factor among the § 3553(a) factors that are to be taken into account in arriving at an appropriate sentence.

(3) If a court decides that a sentence outside the guidelines is warranted, then it must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.

(4) Courts must explain the selected sentence sufficiently to permit meaningful appellate review.

*United States v. Carty*, 520 F.3d 984, 991-92 (9th Cir. 2008).

"As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

### A. Offense Level Calculation

The PSR calculated Defendant's total offense level as 43. PSR ¶ 85. This includes a 5-level enhancement pursuant to U.S.S.G. §4B1.5, followed by a reduction down to 43 pursuant to Chapter 5, Part A. PSR ¶¶ 83, 85. It is the government's understanding that the PSR will be amended to correct the §4B1.5 calculation; thus, the United States did not file an objection. Regardless of the five levels, however, Defendant's total offense level will nevertheless remain 43 – the maximum available under the guideline sentencing scheme, because even without the enhancement of §4B1.5, Defendant's offense level exceeds 43. PSR ¶ 82.

United States' Sentencing Memorandum – 4

B.  Criminal History Calculation

The PSR correctly calculated the defendant's criminal history category as Category V.  PSR ¶ 105.

C.  Advisory Guideline Range

Based upon a total offense level of 43 and a criminal history category of V, the advisory guideline imprisonment range is life.  PSR ¶ 137.  None of the offenses for which Defendant is being sentenced carry a maximum life term of imprisonment; however, the authorized maximum sentences for each count may be imposed consecutively to achieve the advisory guideline range.  U.S.S.G. §5G1.2(d).[1]

The Guidelines further recommend a life term of supervised release.  U.S.S.G. § 4B1.5 n.5(A) (recommending the statutory maximum term of supervised release for offenders sentenced under §4B1.5).  PSR ¶ 144.

## II.  Departures

The United States does not recommend a departure from the advisory guideline range.

---

[1] "If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects, sentences on all counts shall run concurrently, except to the extent otherwise required by law." U.S.S.G. §5G1.2(d).

United States' Sentencing Memorandum – 5

### III. 18 U.S.C. § 3553

A. 18 U.S.C. § 3553(a) factors

1. The nature and circumstances of the offense

The horrific nature and circumstances of Defendant's offense warrant a sentence of 70 years, followed by a life term of supervised release. Not for the first time, Defendant preyed upon a very young girl to fulfill his sexual desires. In order to gain access to her, he manipulated the adults in her life – her mother, her aunt, his girlfriend, minimizing the true character of his prior sex offense, convincing them he was a God-fearing Christian who had changed his ways, and befriending them. Like a wolf in sheep's clothing, he used his girlfriend to make himself appear safe and trustworthy. He was so skilled at his performance that he convinced his girlfriend to marry him, even after she identified him and Minor S in child pornography Defendant created, after she saw with her own eyes what he had been doing.

While the communications with Co-defendant Bolen span approximately six weeks at the end of 2021, the evidence makes clear that Defendant had been grooming and sexually abusing Minor S for much longer. There are child pornography files of Minor S in Defendant's iCloud account that are dated in May 2021. PSR ¶ 24. Minor S also disclosed to her family that Defendant had kissed her; yet, because Defendant was able to convince them that the victim was lying, she

United States' Sentencing Memorandum – 6

recanted. Lastly, Defendant himself described in messages with Co-defendant Bolen how he was trying to teach the victim that it "is ok to look and touch," because he "REALY" [sic] wanted to have sex with her, before she got older and became "too old for" him. PSR ¶ 20. He was prepared to obtain chloroform in order to keep her sedated if necessary, when what he had been using was losing its efficacy. PSR ¶ 20.

Additionally, law enforcement found a collection of child pornography depicting victims other than Minor S in Defendant's cloud account, where the victims were prepubescent girls, aged infant up to approximately 12 years old. PSR ¶ 27. Revealing Defendant's sadistic nature, the files depicted brutal infant rape and bondage. *Id*.

Furthermore, Defendant committed all these acts having previously been convicted of child molestation and while required to register as a sexual offender. It is no small thing for one to be brazen enough to continue victimizing children after having been caught and convicted, much less, while having to routinely report to authorities where one works and lives.

Defendant's crimes warrant a meaningful prison sentence and support the 70 years recommended by the United States.

2. <u>The history and characteristics of the defendant</u>

Defendant's history and characteristics also support a 70-year sentence and life term of supervised release. Defendant has proven himself to be an undeniable danger to the community. He is the predator of parents' nightmares. Not only is he sadistic and sexually interested in even the youngest children, but he knows what to say and how to act to gain access to children and the trust of the adults meant to protect them. He uses religion as a guise and hides behind a female romantic partner as part of the performance. As early as 1996, a sex offender treatment professional deemed Defendant a "high risk to sexually reoffend" and "not a candidate for outpatient therapy." PSR ¶ 97. As Defendant's more recent crimes demonstrate, Defendant has only become more depraved and better at hiding it since his early sexual offending of at least three minor children. PSR ¶¶ 95-96.

3. <u>The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment.</u>

Crimes involving the sexual exploitation of a minor child are among the most serious and reprehensible crimes that can be committed. The long-lasting trauma inflicted by virtue of sexual abuse, as well as by the online circulation of the documentation of that abuse in the form of videos and photographs, is widely recognized. Child sexual abuse is a significant predictor of long-term psychological difficulties extending "from depression and anxiety to sexual problems and

United States' Sentencing Memorandum – 8

dissociative symptomatology" for example.[2] And female survivors of child sexual abuse have heightened psychophysiological reactivity that is associated with reminders of the trauma and with Post-Traumatic Stress Disorder symptom severity.[3]

The harm is not limited to hands-on sexual abuse. *See, e.g., United States v. Williams*, 553 U.S. 285, 307 (2008) ("Child pornography harms and debases the most defenseless of our citizens."); *United States v. Monzel*, 746 F.Supp.2d 76 (D.D.C. 2010) ("It is beyond dispute that child pornography victims suffer from trauma as a result of their sexual abuse, and that the knowledge that anonymous individuals continue to view and distribute images of their abuse exacerbates the victims' feelings of fear, anxiety, and powerlessness."); Report to the Congress: Federal Child Pornography Offenses, United States Sentencing Commission (December 2012), at vi (child pornography offenses "result in perpetual harm to victims and validate and normalize the sexual exploitation of children"); Emily F. Rothman, Chapter 10: Child Sexual Abuse Imagery, Pornography and Public Health,

---

[2] Merrill, L. L., Thomsen, C. J., Sinclair, B. B., Gold, S. R., & Milner, J. S. (2001); Predicting the impact of child sexual abuse on women: The role of abuse severity, parental support, and coping strategies. *Journal of Consulting and Clinical Psychology, 69*(6), 992-1006.

[3] McDonagh-Coyle, A., McHugo, G. J., Friedman, M. J., Schnurr, P. P., Zayfert, C., & Descamps, M. (2001); Psychophysiological reactivity in female sexual abuse survivors. *International Society for Traumatic Stress Studies*, 667-683.

United States' Sentencing Memorandum – 9

Oxford University Press, August 2021 at 165. https://academic.oup.com/book/39816/chapter/339938530 ("Some argue that new damage is done to a child each time videos or images of their victimization or abuse are viewed because it causes fresh humiliation and pain to know people are deriving pleasure from their exploitation.") (citing Gewirtz-Meydan, Lahav, Walsh, and Finkelhor, 2019, "Psychopathology Among Adult Survivors of Child Pornography." *Child Abuse & Neglect* 98: 11).

A total sentence of 70 years, followed by a life term of supervised release, recognizes the seriousness of all of Defendant's conduct, promotes respect for the law, and is just punishment.

> 4. <u>The need for the sentence imposed to afford adequate deterrence and to protect the public.</u>

The only way to adequately protect the public from Defendant is to incarcerate him for as long as the law allows. A prison sentence of 70 years and a life term of supervised release is such as sentence. Defendant is presently 47 years of age. He has nearly two years of custodial time (back to September 6, 2023) that may count as credit for time served. PSR ¶ 2. Whether he is to receive credit in some fashion for additional time he has been in custody on the related state case is as yet undetermined. However, assuming for purposes of argument that he receives credit in some fashion for approximately four years' time, and assuming he earns

United States' Sentencing Memorandum – 10

additional good time credit from the Bureau of Prison, Defendant will be in his 90s when he satisfies a 70-year sentence.

5. The kinds of sentences available

The Court may sentence Defendant to a term of prison of no less than 35 years and no more than 150 years, followed by a term of supervised release of not less than five years, up to life.

Additionally, the Court may impose a fine of up to $250,000 and impose special assessments totalling up to $135,000 pursuant to the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 (AVAA), and a $5,000 assessment pursuant to the Justice for Victims of Trafficking Act of 2015, for each count of conviction. PSR ¶¶ 146, 161; ECF No. 4.

6. The established sentencing range

Based upon a total offense level of 43 and a criminal history category of V, the advisory guideline imprisonment range is life. PSR ¶ 137. The advisory term of supervised release is life. U.S.S.G. §4B1.5 n.5(A).

7. The need to avoid unwarranted sentence disparities

The government's within-guidelines recommended sentence does not reflect a sentencing disparity.

United States' Sentencing Memorandum – 11

8. <u>The need to provide restitution to any victims of the offense</u>

The National Center for Missing and Exploited Children identified 18 Series within Defendant's child pornography collection. Of those, only four are requesting restitution, as reflected in the PSR, for a total amount of $18,500. PSR ¶¶ 48-52.

No restitution has been requested on behalf of Minor S.

B. <u>Application of the Guidelines in Imposing a Sentence under 18 U.S.C. § 3553(b)</u>

The guidelines, formerly mandatory, now serve as one factor among several that courts must consider in determining an appropriate sentence. *Kimbrough v. United States*, 552 U.S. 85, 90 (2007). It remains, however, that "the Commission fills an important institutional role: It has the capacity courts lack to base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise." *Id.* at 108-09 (internal quotation marks omitted). Thus, "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Id.* (quoting *Rita v. United States*, 551 U.S. 338, 350 (2007)).

The United States' recommended sentence of 70 years is within the advisory guideline range set forth in the PSR.

United States' Sentencing Memorandum – 12

### IV. $5,000 Special Assessment of the JVTA

The United States does not seek the imposition of a $5,000 special assessment pursuant to the Justice for Victims of Trafficking Act (JVTA).

### V. $50,000 and $35,000 Special Assessments of the AVAA

It is appropriate for the Court to consider imposition of an assessment pursuant to the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 (AVAA). Assessments paid under the AVAA are deposited into the Child Pornography Victims Reserve, which funds are available to victims in partial or full satisfaction of their restitution claims. 18 U.S.C. §§ 2259B(b), 2259(d). "It is the intent of Congress that victims of child pornography be compensated for the harms resulting from every perpetrator who contributes to their anguish. Such an aggregate causation standard reflects the nature of child pornography and the unique ways that it actually harms victims." AVAA, PL 115-299, December 7, 2018, 132 Stat 4383.

Under the AVAA, the Court shall assess not more than $50,000 upon conviction of production of child pornography. 18 U.S.C. § 2259A(a)(3). The Court shall assess not more than $35,000 upon conviction of receiving, distributing, or transporting child pornography. 18 U.S.C. §§ 2259A(a)(2); 2259(c)(3). This assessment is "in addition to any other criminal penalty, restitution, or special assessment authorized by law." § 2259A(a). Imposition of an AVAA assessment

United States' Sentencing Memorandum – 13

"does not relieve a defendant of, or entitle a defendant to reduce the amount of, any other penalty by the amount of the assessment." 18 U.S.C. § 2259A(d)(2).

In determining the amount of AVAA assessment to impose, the Court shall "consider the factors set forth in sections 3553(a) and 3572." 18 U.S.C. § 2259A(c). These factors include, in addition to the 3553(a) factors discussed above:

> (1) The defendant's income, earning capacity, and financial resources;
> (2) The burden that the fine will impose upon the defendant, any person who is financially dependent on the defendant, or any other person (including a government) that would be responsible for the welfare of any person financially depending on the defendant, relative to the burden that alternative punishments would impose;
> (3) Any pecuniary loss inflicted upon others as a result of the offense;
> (4) Whether restitution is ordered or made and the amount of such restitution;
> (5) The need to deprive the defendant of illegally obtained gains from the offense;
> (6) The expected costs to the government of any imprisonment, supervised, release, or probation component of the sentence; [and]
> (7) Whether the defendant can pass on to consumers or other persons the expense of the fine.

18 U.S.C. § 3572(a).

Typically, there would be a restitution request in a case such as this, perhaps one as significant as or greater than $50,000 for Minor S. There is not. There are requests for restitution, as reflected herein and in the PSR, the Court is to consider.

While Defendant's income and earning capacity is diminished by a lengthy prison sentence such as that recommended by the United States, Defendant may be required to participate in the Bureau of Prison's Inmate Financial Responsibility

United States' Sentencing Memorandum – 14

Program and pay quarterly towards any outstanding monetary penalty. If ordered to pay a nominal $25 per quarter, for example, Defendant could pay $7,000 through the IFRP by the time he is released to supervised release after a 70-year prison term.

## CONCLUSION

Application of 18 U.S.C. § 3553 supports a sentence of 70 years, followed by a life term of supervised release for Defendant's crimes.  The government submits that such a sentence is sufficient, but not greater than necessary, to accomplish the goals of sentencing, and that a lesser sentence is not supported by application of the 18 U.S.C. § 3553(a) factors.

Respectfully submitted:  April 8, 2025.

Richard R. Barker
Acting United States Attorney

*s/ Ann T. Wick*
Ann T. Wick
Assistant United States Attorney

United States' Sentencing Memorandum – 15

**CERTIFICATE OF SERVICE**

I hereby certify that on April 8, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to defense counsel of record.

*s/ Ann T. Wick*
Ann T. Wick
Assistant United States Attorney
